UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-cv-20576-ALTMAN/Sanchez

**ANGELA BRANYON**,

    *Plaintiff*,

v.

**CARNIVAL CORPORATION**,

    *Defendant*.

_____/

## ORDER DENYING MOTION TO DISMISS

The Defendant, Carnival Corporation, has moved to dismiss Counts I, III, and IV of the Plaintiff's Complaint. *See* Defendant's Motion to Dismiss the Complaint (the "Motion to Dismiss") [ECF No. 10]. For the reasons we outline below, the Motion to Dismiss is **DENIED**.[1]

### THE FACTS[2]

Our Plaintiff, Angela Branyon, has sued the Defendant, Carnival, asserting four negligence claims: "Negligent Maintenance (Direct Liability)" (Count I); "Negligent Failure to Warn (Direct Liability)" (Count II); "Negligent Maintenance (Vicarious Liability)" (Count III); and "Negligent Failure to Warn (Vicarious Liability)" (Count IV). *See* Complaint [ECF No. 1] at 4–14. Branyon alleges that, on December 16, 2022, while she was a fare-paying passenger aboard the cruise ship *Freedom*, and as she was "walking through the Habana Bar area" of the ship, "she tripped when her foot became caught by cables underneath an uneven and/or raised cable strip, which was situated in a manner that was not flush with the surrounding floor, causing [her] to fall and sustain significant injuries, including

---

[1] The Motion to Dismiss is ripe for resolution. *See* Plaintiff's Response to Defendant's Motion to Dismiss (the "Response") [ECF No. 21]. The Defendant did not file a reply.

[2] We take the following facts from the Plaintiff's Complaint and accept them as true for purposes of this Order.

. . . to her right foot." *Id.* ¶ 13. According to the Plaintiff, the "exposed gap underneath the raised cord strip was not visible to reasonable passengers walking through the area, . . . and hence was not known or obvious to Plaintiff at the time that she fell." *Ibid.* Branyon adds that, "[a]s a direct and proximate result of [this] fall[,] . . . [she] was injured in and about her body and extremities, sustaining injuries including but not limited to an anterior calcaneal process fracture, suffered pain therefrom, and sustained mental anguish, disfigurement, disability and the inability to lead a normal life, and aggravation or activation of preexisting conditions." *Id.* ¶ 15. Branyon thus "demands judgment against [the] Defendant, Carnival, for compensatory damages, interest and the costs of this action[.]" *Id.* ¶ 51.

Carnival now moves to dismiss Counts I, III, and IV of the Complaint under Rules 8(a), 10(b), and 12(b)(6) of the Federal Rules of Civil Procedure. *See* Motion to Dismiss at 1. We'll address—and reject—each of the Defendant's arguments in turn.

## THE LAW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309–10 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 545). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully." *Iqbal*, 556 U.S. at 678. On a motion to dismiss, "the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016). "The motion is granted only when the movant demonstrates that the complaint has failed to include 'enough facts to state a claim to relief that is plausible on its face.'" *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) (quoting *Twombly*, 550 U.S. 544, 570 (2007)).

"Claims arising from torts committed aboard ships on navigable waters are governed by general maritime law." *Breaux v. NCL (Bahamas) Ltd.*, 2022 WL 2304254, at *6 (S.D. Fla. June 24, 2022) (Altman, J.); *see also Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1320 (11th Cir. 1989) ("[W]e note that the substantive law applicable to this action, which involves an alleged tort committed aboard a ship sailing in navigable waters, is the general maritime law[.]").

To plead negligence in a maritime-tort case, "a plaintiff must allege that (1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012). "With respect to the duty element in a maritime context, 'a shipowner owes the duty of exercising reasonable care towards those lawfully aboard the vessel who are not members of the crew.'" *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019) (quoting *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630 (1959)). This reasonable-care standard "requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition, at least where . . . the menace is one commonly encountered on land and not clearly linked to nautical adventure." *Keefe*, 867 F.2d at 1322. "Actual notice exists when the defendant knows of the risk-creating condition," *Gorczyca v. MSC Cruises, S.A.*, 715 F. App'x 919, 921 (11th Cir. 2017), while constructive notice exists when the

3

defendant "*should have known* of the dangerous condition," *Woodley v. Royal Caribbean Cruises, Ltd.*, 472 F. Supp. 3d 1194, 1204 (S.D. Fla. 2020) (Moore, C.J.).

## ANALYSIS

### I.   Shotgun Pleading

Carnival first asks us to dismiss Count I of the Complaint as a shotgun pleading "because it incorporates multiple claims for relief." Motion to Dismiss at 3. Specifically, Carnival avers that Count I "nestles a negligent training claim within a general negligence claim[.]" *Id.* at 4. "In Count I of the Complaint," Carnival says, the "Plaintiff alleges various negligent acts or omissions, including among them the allegation that Carnival '[f]ail[ed] to adequately train its crewmembers to maintain the floor surface in the area where Plaintiff tripped, and adjacent areas, free of tripping hazards[.]' . . . . Where [a claim for negligent training] is incorporated within a general negligence count, as it is here, that count is properly dismissed as a shotgun pleading." *Ibid.* (quoting Complaint ¶ 23).

To comply with federal pleading standards, a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The Federal Rules also require plaintiffs to "state [their] claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances." FED. R. CIV. P. 10(b). As the Eleventh Circuit has explained, a complaint is an impermissible "shotgun" pleading if it:

> (1) contains multiple counts where each count adopts the allegations of all preceding counts; (2) is replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action; (3) fails to separate into a different count each cause of action; or (4) asserts multiple claims against multiple defendants without specifying which defendant is responsible for which act.

*Embree v. Wyndham Worldwide Corp.*, 779 F. App'x 658, 662 (11th Cir. 2019). Here, Carnival contends that Count I of the Complaint "falls within the third category [of shotgun pleadings] because it nestles a negligent training claim within a general negligence claim, a practice which has been repeatedly condemned by courts in this district." Motion to Dismiss at 4.

4

We're not persuaded. As an initial matter, Count I is *not* a "general negligence claim," *see ibid.*, but rather a claim for negligent maintenance,[3] *see* Complaint at 4, suggesting (though we can't be sure) that this portion of the Motion to Dismiss may have been copied and pasted from another case.

In any event, we don't think the Plaintiff's single reference in Count I to Carnival's failure to adequately train its employees transforms the count into a shotgun pleading. Count I, recall, alleges that Carnival breached its "duty to maintain its vessel, including the floor surface in the area where Plaintiff tripped and fell, in a reasonably safe condition." Complaint ¶ 17; *see also id.* ¶ 22 ("Notwithstanding Defendant's actual and/or constructive knowledge of the dangerous condition[,] the Defendant failed before the time of the Plaintiff's fall to take reasonable measures to maintain the area in a reasonably safe manner. Defendant thereby failed to exercise reasonable care for the safety of its passengers, including the Plaintiff, and was thereby negligent."). The Plaintiff goes on to enumerate the "Defendant's specific negligent acts and/or omissions," including Carnival's "[f]ail[ure] to adequately train its crewmembers *to maintain the floor surface in the area where Plaintiff tripped*[.]" *Id.* ¶ 23 (emphasis added). We interpret this sentence as a description of one of the ways in which (the Plaintiff says) the Defendant failed to maintain its premises—not as an attempt to sneak a failure-to-train claim inside a claim for negligent maintenance. In other words, we agree with the Plaintiff that "the isolated reference to training" in Count I "indicates that [Carnival] did not effectively train its workers [on] how to properly maintain a safe floor surface where Plaintiff ultimately fell," and that "[t]his is not the same as an assertion that the methods, system, or general practice of training by [Carnival] [were] negligent." Response at 2. With the understanding that we won't allow the Plaintiff to sneak a

---

[3] The "negligent failure to maintain" is a "distinct negligence claim[ ]" that cannot be pled "within a general negligence claim." *Pride v. Carnival Corp.*, 2023 WL 6907813, at *4 (S.D. Fla. Oct. 19, 2023) (Bloom, J.) (cleaned up).

5

negligent-training claim into a case about negligent maintenance, we **DENY** the Motion to Dismiss Count I as an impermissible shotgun pleading.

### II.     Vicarious Liability

Next, Carnival "moves to dismiss [the] Plaintiff's vicarious liability claims (Counts III and IV) for failure to state a claim because claims for negligent maintenance and negligent failure to warn are limited to direct liability claims, and further, because Counts III and IV are duplicative of Counts I and II." Motion to Dismiss at 2. Here's Carnival's argument for its view that negligent-maintenance claims and negligent failure-to-warn claims can only be asserted as direct-liability claims:

> The Eleventh Circuit addressed circumstances in which maritime negligence claims are properly alleged under theories of vicarious liability in *Yusko v. NCL (Bah.), Ltd.*, 4 F.4th 1164 (11th Cir. 2021). In *Yusko*, a cruise passenger alleged that she was injured by the negligence of the ship's dance instructor when he dropped her during a dance competition. *Id.* at 1166. The district court granted summary judgment to the defendant cruise line, finding the plaintiff failed to demonstrate the defendant's notice of the risk-creating condition that caused her injury – i.e. the allegedly negligent dancing of its crewmember. *Id.* The Eleventh Circuit reversed, holding that "the notice requirement does not—and was never meant to—apply to maritime negligence claims proceeding under a theory of vicarious liability." *Id.* at 1167. The court reasoned that a claim for vicarious liability is not premised on the shipowner's conduct, but rather, "[w]hen the tortfeasor is an employee, the principle of vicarious liability allows an otherwise non-faulty employer to be held liable for the negligent acts of that employee acting within the scope of employment." *Id.* at 1169 (cleaned up) . . . .
>
> Following *Yusko*, several courts in this district rejected attempts by plaintiffs to allege negligent maintenance and negligent failure to warn as vicarious liability claims. *See Britt v. Carnival Corp.*, 580 F. Supp. 3d 1211, 1215 (S.D. Fla. 2021) ("[T]he Court does not read *Yusko* so broadly as to permit negligent maintenance and failure to warn claims brought under a vicarious liability theory.")[;] *Worley v. Carnival Corp.*, No. 21-23501-CIV, 2022 U.S. Dist. LEXIS 51319 (S.D. Fla. Mar. 21, 2022) (finding that failure to maintain and failure to warn claims, regardless of how plead, are direct liability claims and thus require notice).
>
> Accordingly, Plaintiff's claims for negligent maintenance and negligent failure to warn may only be alleged as direct liability claims and must allege facts demonstrating Carnival's notice of the alleged danger. Both Count III and Count IV are improperly pleaded direct liability claims which fail to allege any facts regarding notice and thus both counts fail to state a claim and must be dismissed.

Motion to Dismiss at 6–7.

To the extent Carnival is arguing that "*Yusko* . . . preclude[s] vicarious liability claims for negligent maintenance and negligent failure to warn," *id.* at 7, we reject its interpretation and respectfully disagree with our colleagues' decisions in *Britt* and *Worley*. Far from implying that a plaintiff is barred from asserting negligent-maintenance or negligent failure-to-warn claims under a theory of vicarious liability, *Yusko* made clear that a "plaintiff is the master of his or her complaint and may choose to proceed under a theory of direct liability, *vicarious liability, or both*." *Yusko v. NCL (Bahamas), Ltd.*, 4 F.4th 1164, 1170 (11th Cir. 2021) (emphasis added). The *Yusko* Court even added that, "in some cases [alleging negligent failure to warn or failure to maintain], it will be easier for a passenger to proceed under a theory of vicarious liability than under one of direct liability[.]" *Ibid.*

And *most* courts in our District have interpreted *Yusko*, not as foreclosing vicarious-liability negligence claims, but as "recognizing that a plaintiff will not always be able to plead a vicarious liability claim plausibly and in good faith." *Hunter v. Carnival Corp.*, 609 F. Supp. 3d 1305, 1310 (S.D. Fla. 2022) (Altonaga, J.); *see also ibid.* ("[J]ust as *Yusko* permits, [p]laintiff has asserted both direct and vicarious liability claims against [d]efendant here. Plaintiff may or may not be able to prove the cabin steward's negligence in the end. But [p]laintiff is certainly allowed to allege that the cabin steward negligently set up [p]laintiff's cabin and that [d]efendant is vicariously liable as a result."); *Green v. Carnival Corp.*, 614 F. Supp. 3d 1257, 1267 n.6 (S.D. Fla. July 12, 2022) (Bloom, J.) ("To the extent that [d]efendant appears to argue that . . . *Yusko* established that 'claims for negligent maintenance and failure to warn are limited to a theory of direct liability,' the [c]ourt disagrees . . . . *Yusko* did not limit negligent maintenance and failure to warn claims as theories of direct liability *in all circumstances*."); *Mathis v. Classica Cruise Operator Ltd. Inc.*, 2024 WL 1430508, at *6 (S.D. Fla. Apr. 1, 2024) (McCabe, Mag. J.) ("The [c]ourt does not interpret [*Yusko*] to impose the blanket ban that [d]efendant suggests. Rather, the language simply acknowledges that in many cases passengers will seek to hold the principal liable for maintaining dangerous premises . . . . The language does not foreclose the possibility that plaintiffs

7

in other cases might hold the principal liable under a theory of vicarious liability based on the conduct of specific agents of the principal who were responsible for the tort."); *Davis v. Carnival Corp.*, 2023 WL 5955700, at *3 (S.D. Fla. July 31, 2023) (Reid, Mag. J.) (rejecting Carnival's interpretation of *Yusko* and holding that, while the plaintiff "may be unable to prove the crewmembers' negligence" at trial, "she must nonetheless be allowed to assert a vicarious liability claim against Carnival" at the pleading stage). We likewise find that *Yusko* does not bar a plaintiff from asserting negligent-maintenance or failure-to-warn claims under a theory of vicarious liability.[4]

Finally, Carnival argues that, "even if this Court finds that *Yusko* does not preclude vicarious liability claims for negligent maintenance and negligent failure to warn as some other courts in this district have done, Counts III and IV should nonetheless be dismissed because they are duplicative of Counts I and II." Motion to Dismiss at 7. "At bottom," Carnival says, "Count I and Count III both allege that the same dangerous condition, an uneven and/or raised cable strip, caused Plaintiff to trip and fall, and both counts allege the same breaches of duty . . . . In a similar fashion, Counts II and IV

---

[4] Again, a plain reading of *Yusko* mandates this finding. As the Circuit explained:

> A plaintiff is the master of his or her complaint and may choose to proceed under a theory of direct liability, vicarious liability, or both. It may be true that, in some cases, it will easier for a passenger to proceed under a theory of vicarious liability than under one of direct liability. But common sense suggests that there will be just as many occasions where passengers are limited to a theory of direct liability. Sometimes, as in *Keefe*, a passenger will not be able to identify any specific employee whose negligence caused her injury. In other cases, a passenger will seek to hold a shipowner liable for maintaining dangerous premises (as in *Everett*), for failing to warn of dangerous conditions off-ship (as in *Chaparro*), or for negligence related to the actions of other passengers (as in *K.T.*). Accordingly, we are confident that the notice requirement will have a robust field of operation despite our decision not to extend it to vicarious liability.

*Yusko*, 4 F.4th at 1170. Nothing in this passage suggests that a passenger may *not* bring a maritime-negligence claim against a shipowner based on an employee's negligence under a theory of vicarious liability. In fact, it indicates precisely the opposite. In any event, if the Eleventh Circuit had wanted to hold that negligent-maintenance and negligent failure-to-warn claims can be asserted *only* under a theory of direct liability, it surely would have said so.

both allege the same failure by Carnival and/or its crewmembers to warn Plaintiff of the same condition – the presence of the cable strip . . . . Plaintiff's direct and corresponding vicarious liability claims are premised on the same risk-creating condition, and the same failure to warn her of that condition. As such, Counts III and IV are duplicative and should be dismissed with prejudice." *Id.* at 9.

We disagree. As many of our colleagues have explained, a plaintiff is "entitled to plead [vicarious-liability] claims in the alternative" to her direct-liability claims for negligent maintenance or negligent failure to warn. *See Benson v. Carnival Corp.*, 2024 WL 964235, at *4 (S.D. Fla. Mar. 6, 2024) (Scola, J.); *see also Hostert v. Carnival Corp.*, 2022 WL 22393202, *3 (S.D. Fla. Aug. 10, 2022) (Graham, J.) (same); *Coletti v. Carnival Corp.*, 2024 WL 580355, at *3 (S.D. Fla. Feb. 13, 2024) (Bloom, J.) ("Consistent with *Yusko*, [p]laintiff alleges negligent maintenance (Count IV), negligent failure to correct (Count V), and negligent failure to warn (Count VI) claims under both theories [of liability]. *Yusko* accordingly provides no support for dismissing Counts IV–VI simply because the [c]omplaint also alleges those claims based on a theory of vicarious liability." (cleaned up)). In any event, vicarious-liability claims and direct-liability claims aren't duplicative of one another. In direct-liability claims, after all, the plaintiff must show that the defendant had notice of the dangerous condition—a requirement that same plaintiff doesn't have to prove in her vicarious-liability claim. *See, e.g.*, *Green*, 614 F. Supp. 3d at 1266 ("[P]laintiffs are generally not required to allege actual or constructive notice of the danger to assert claims of vicarious liability."). At this stage of the case, then, we see no reason to preclude the Plaintiff from proceeding with her theory that Carnival is "vicariously liable for the negligent acts and omissions of an identified crewmember employee, a photographer's assistant whose negligence contributed to Ms. Branyon's trip and fall." Response at 6.

\*   \*   \*

Accordingly, we hereby **ORDER and ADJUDGE** that the Defendant's Motion to Dismiss the Complaint [ECF No. 10] is **DENIED**.

**DONE AND ORDERED** in the Southern District of Florida on June 24, 2024.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record