UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-cv-20576-ALTMAN/Sanchez

ANGELA BRANYON,

       *Plaintiff*,

*v.*

CARNIVAL CORPORATION,

       *Defendant*.

_____/

<u>**OMNIBUS ORDER ON MOTIONS FOR SUMMARY JUDGMENT**</u>

Our Plaintiff, Angela Branyon, was a passenger aboard Carnival's cruise ship, *Freedom*, on December 16, 2022. *See* Joint Statement of Undisputed Facts ("JSUF") [ECF No. 60] ¶ 1. On the first day of her voyage, Branyon tripped over a cable cover while walking through the ship's Habana Lounge. *See* Complaint [ECF No. 1] ¶ 13 ("As Plaintiff was walking through the Habana Bar area, she tripped when her foot became caught by cables underneath an uneven and/or raised cable strip[.]"). Branyon subsequently sued Carnival, asserting four counts of negligence and vicarious liability. *See generally id.* ¶¶ 16–51. Carnival now moves for summary judgment. *See generally* Defendant's Motion for Summary Judgment ("MSJ") [ECF No. 56].[1] After careful review, we **GRANT in part and DENY in part** Carnival's request for summary judgment. Branyon has also moved for partial summary judgment on her vicarious-liability claims. *See generally* Plaintiff's Motion for Partial Summary Judgment ("Plaintiff's MSJ") [ECF No. 59]. Because Carnival has demonstrated that it's entitled to summary judgment on Branyon's vicarious-liability claims, we **DENY as moot** Branyon's request for partial summary judgment.

_____

[1] The MSJ has been fully briefed and is ripe for adjudication. *See* Plaintiff's Response to MSJ ("Response") [ECF No. 64]; Reply in Support of MSJ ("Reply") [ECF No. 70].

## THE FACTS

At approximately 5:00 PM on December 16, 2022, Branyon and her daughter went to the Habana Lounge on the *Freedom* to "meet the rest of their family for a photo session." Defendant's Statement of Material Facts ("DSMF") [ECF No. 55] ¶¶ 1–2; *see also* Plaintiff's Response in Opposition to Defendant's Statement of Material Facts ("DSMF Response") [ECF No. 63] ¶¶ 1–2 (As to each paragraph, "[u]ndisputed."). After Branyon arrived at the Habana Lounge, a Carnival photographer's assistant informed her that "the rest of the family had gone to the ship's atrium for photos" and told her to follow the photographer's assistant to the atrium. DSMF ¶ 3; *see also* DSMF Response ¶ 3 ("Undisputed that Ms. Branyon went to the Habana Lounge and was told by the photographer's assistant, Alan, that the family photo shoot was taking place in the Atrium. Plaintiff disputes the characterization that he escorted her. Plaintiff testified that Alan merely said, 'Follow me.'").

As she was walking through the Habana Lounge, "Branyon caught the toes of her right foot under the end of a cable cover . . . and fell." DSMF ¶ 7; *see also* DSMF Response ¶ 7 (Undisputed in relevant part). After her fall, Branyon was taken by wheelchair to the medical center, while her husband went to the Habana lounge to take pictures of the spot where the incident occurred. *See* DSMF ¶ 11; *see* DSMF Response ¶ 11 ("Undisputed."). "When Branyon's husband took his pictures, the cable cover had not been moved from where Branyon observed it after her accident." DSMF ¶ 12; *see also* ¶ 12 ("Undisputed except that Plaintiff testified she thought an orange cord had been removed.").

The cable cover in the Habana Lounge was inspected each morning by a technician "to ensure it was in the proper place." DSMF ¶ 18; *see also* DSMF Response ¶ 18 ("Undisputed."). The technician on duty on the day of Branyon's accident "found the cables and cable cover in the appropriate place when they did their inspection that morning." DSMF ¶ 19; *see also* DSMF Response ¶ 19 ("Undisputed."). There have been no previously reported tripping incidents involving the cable cover, nor have passengers complained that the cable cover posed a tripping hazard. *See* DSMF ¶ 23; *see also*

DSMF Response ¶ 23 ("Undisputed except that Defendant's Entertainment Technical Manager testified that the exposed end of a cable hose protector is a tripping hazard."). The parties disagree over whether the cable cover was out of place before Branyon's accident or whether she moved it out of place when she tripped. *See* DSMF ¶ 21; *see also* DSMF Response ¶ 21 ("Disputed."). Because Branyon is the non-moving party, we'll infer that the cable cover was out of place *before* her accident and that it wasn't knocked out of place by her fall.[2]

In her Complaint, Branyon argues that the cable cover was "situated in a manner that was not flush with the surrounding floor, causing Plaintiff to fall and sustain significant injuries, including without limitation, to her right foot." Complaint ¶ 13. Branyon's Complaint asserts four negligence claims against Carnival: "Negligent Maintenance (Direct Liability)" (Count I); "Negligent Failure to Warn (Direct Liability)" (Count II); "Negligent Maintenance (Vicarious Liability)" (Count III); and "Negligent Failure to Warn (Vicarious Liability)" (Count IV). *See id.* ¶¶ 16–51. Carnival contends that it is entitled to summary judgment on each of the four counts. *See generally* MSJ.

## THE LAW

"Maritime law governs actions arising from alleged torts committed aboard a ship sailing in navigable waters." *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019). "Drawn from state and federal sources, the general maritime law is an amalgam of traditional common-law rules, modifications of those rules, and newly created rules." *Misener Marine Const., Inc. v. Norfolk Dredging Co.*, 594 F.3d 832, 838 (11th Cir. 2010) (quoting *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864–65 (1986)). A cruise line "is not liable to passengers as an insurer," but is instead liable to

---

[2] Branyon is, of course, the moving party for her own MSJ, but this Order focuses on Carnival's MSJ, so we'll construe "the facts and all reasonable inferences in the light most favorable" to Branyon. *Pennington v. City of Huntsville*, 261 F.3d 1262, 1265 (11th Cir. 2001). Because Carnival is entitled to summary judgment on Branyon's vicarious-liability claims under this more stringent standard, we needn't duplicate our analysis in the light most favorable to Carnival to adjudicate the Plaintiff's MSJ.

passengers "only for its negligence." *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989) (cleaned up). "The elements of a maritime negligence claim, in turn, are well-established, and stem from general principles of tort law." *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1178 (11th Cir. 2020). A cruise passenger must show that "(1) the defendant had a duty to protect the plaintiff from a particular injury, (2) the defendant breached that duty, (3) the breach actually and proximately caused the plaintiff's injury, and (4) the plaintiff suffered actual harm." *Guevara*, 920 F.3d at 720 (quoting *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012)).

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *Id.* at 248. A dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *Ibid.* "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

At summary judgment, the moving party bears the initial burden of "showing the absence of a genuine issue as to any material fact." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."). Once the moving party satisfies its initial burden, the burden then shifts to the non-moving party to "come forward with specific facts showing there is a genuine issue for trial." *See Bailey v. Allgas,*

*Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The Court, in ruling on a motion for summary judgment, "need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3); *see also HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*, 703 F. App'x 814, 817 (11th Cir. 2017) (noting that a "court may decide a motion for summary judgment without undertaking an independent search of the record" (quoting FED. R. CIV. P. 56 advisory committee's note)). In any event, on summary judgment, the Court must "review the facts and all reasonable inferences in the light most favorable to the non-moving party." *Pennington*, 261 F.3d at 1265.

In sum, if there are any genuine issue of material fact, the Court must deny summary judgment and proceed to trial. *See Whelan v. Royal Caribbean Cruises Ltd.*, 2013 WL 5583970, at *2 (S.D. Fla. Aug. 14, 2013) (Ungaro, J.). On the other hand, the Court must grant summary judgment if a party "has failed to make a sufficient showing on an essential element of her case." *Celotex*, 477 U.S. at 323; *see also Lima v. Fla. Dep't of Child. & Fams.*, 627 F. App'x 782, 785–86 (11th Cir. 2015) ("If no reasonable jury could return a verdict in favor of the nonmoving party, there is no genuine issue of material fact and summary judgment will be granted." (quoting *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir. 1994))).

## ANALYSIS

Carnival advances three arguments: *First*, it says that "the cable cover was open and obvious, and therefore, neither Carnival nor any individual member of its crew owed Branyon a duty to warn." MSJ at 4. *Second*, Carnival argues that "there is no evidence that Carnival either knew or should have known of the allegedly dangerous condition of the cable cover"—and, therefore, that Carnival had no actual or constructive notice. *Id.* at 6. *Third*, Carnival insists that, "[b]ecause there is no evidence that

any individual crewmember was negligent, Branyon's vicarious liability claims necessarily fail." *Id.* at 11.

## I.     Open and Obvious

Carnival moves for summary judgment on Branyon's failure-to-warn claims (Counts II and IV) because "the cable cover was open and obvious, and therefore, neither Carnival nor any individual member of its crew owed Branyon a duty to warn." MSJ at 4; *see also id.* at 5 ("There is no evidence of any condition that prevented Branyon from seeing and avoiding the cable cover. Branyon admits that the light was bright, and there was nobody else in the area to obscure her view of the floor and the cable cover."). Branyon (obviously) disagrees. She claims that the cable cover wasn't easily observable because it blended into the carpet. *See* Response at 7 ("Carnival used a yellow cable hose protector nearby. The yellow color served to alert pedestrians to a trip hazard. The cable hose protector over which Ms. Branyon tripped and fell was black on top of a black and red carpet."). She also says that, even if she had seen the cable cover, it didn't *obviously* present a dangerous condition. *See ibid.* ("Carnival's own Assistant Chief of Security and Assistant Manager of Housekeeping did not appreciate the hazard even though a passenger had tripped and fallen over the cable hose protector two hours earlier.") In Reply, Carnival maintains that photographs of the cable cover show that it's an open and obvious tripping hazard. *See* Reply at 2.

"[U]nder maritime law, a carrier's duty of reasonable care includes a duty to warn passengers of dangers of which the carrier knows or should know, but which may not be apparent to a reasonable passenger." *Poole v. Carnival Corp.*, 2015 WL 1566415, at *5 (S.D. Fla. Apr. 8, 2015) (Cooke, J.); *see also Dudley v. NCL (Bahamas) Ltd.*, 688 F. Supp. 3d 1194, 1200 (S.D. Fla. 2023) (Bloom, J.) ("[C]ruise lines owe their passengers a duty to warn of known or foreseeable dangers." (cleaned up)). But the "operator of a cruise ship has a duty to warn only of known dangers that are not open and obvious." *Carroll v. Carnival Corp.*, 955 F.3d 1260, 1264 (11th Cir. 2020) (quoting *Guevara*, 920 F.3d at 720 n.5).

"Open and obvious conditions are those that should be obvious by the ordinary use of one's senses. Whether a danger is open and obvious is determined from an objective, not subjective, point of view." *Lugo v. Carnival Corp.*, 154 F. Supp. 3d 1341, 1345–46 (S.D. Fla. 2015) (Moore, C.J.) (cleaned up); *see also Malley v. Royal Caribbean Cruises Ltd.*, 713 F. App'x 905, 908 (11th Cir. 2017) ("To determine whether a condition is open and obvious, this Court asks whether a reasonable person would have observed the condition and appreciated the nature of the condition."). The question, therefore, is whether a reasonable person would've observed the cable cover and appreciated the risk of walking over it.

Having reviewed the record evidence, including photographs of the scene of the accident, we find that the hazard posed by the cable cover wasn't necessarily open and obvious. *First*, photographs show that the cable cover is black and sits on black-and-red carpeting, allowing a reasonable factfinder to conclude that the cable cover *might* have blended in with the carpet. *See* DSMF Response ¶ 27. *Second*, the cable cover sits perpendicular to another cable cover that has additional yellow coloring, distinguishing this latter cable cover from the black-and-red carpet. A reasonable factfinder could conclude that the yellow coloring is necessary to mitigate the risk that the otherwise-black cable cover might go unnoticed. *See ibid*; *see also id.* ¶ 28 ("There is a second cable hose protector perpendicular to the one over which Ms. Branyon tripped and fell which is colored yellow. [ ] The yellow serves as a visual warning."). *Third*, photographs show that the cable cover was placed in a cramped walkway between chairs, speakers, and columns. *See id.* ¶ 27. A reasonable passenger, focused on avoiding these more-obvious obstacles, might fail to notice the cable cover. Taken together, Carnival hasn't shown that the threat posed by the cable cover was necessarily open and obvious.

Carnival analogizes Branyon's case to *Bazan*, where a magistrate judge found that the curved base of a staircase, "prominently positioned at the center of the stage," was "visible and obvious to anyone who approached it." *Bazan v. Carnival Corporation*, 2024 WL 3926291 at *8 (S.D. Fla. Aug. 8,

2024) (Sanchez, Mag. J.). In determining that the base of the staircase presented an open-and-obvious hazard, Magistrate Judge Sanchez found that the plaintiff "actually saw the staircase and walked around its flared base [ ] when she approached the ballot box on stage." *Ibid.* Here, by contrast, Branyon tripped on a much smaller, less prominently placed hazard, and Carnival hasn't pointed to any evidence that Branyon had previously seen it.

Whether the cable cover was an open and obvious hazard is thus a question best left to jurors who can review the evidence and determine the facts for themselves. We therefore **DENY** this aspect of the MSJ.

## II. Notice

Carnival argues that it's entitled to summary judgment on Branyon's direct-liability claims (Counts I and II) because there's no evidence that Carnival "knew or should have known of the allegedly dangerous condition of the cable cover." MSJ at 6. Carnival claims that there isn't any "evidence that any Carnival crewmember knew that the cable cover was out of place before the incident occurred" or "that it was in the wrong position for a sufficient time prior to Branyon's incident that Carnival should have noticed and corrected it." *Id.* at 7. Branyon counters that Carnival had constructive notice of the dangerous condition because "there were four crewmembers known to be in the vicinity of the misplaced cable hose protector – a bartender, a photographer's assistant and two housekeepers." Response at 5.

Shipowners (like Carnival) "owe their passengers a duty of 'ordinary reasonable care under the circumstances.'" *Rondon v. Carnival Corp.*, 2025 WL 2551262, at *2 (S.D. Fla. Sept. 5, 2025) (Altman, J.) (quoting *Keefe*, 867 F.2d at 1322). "This standard requires, as a prerequisite to imposing liability, that the carrier have had actual *or* constructive notice of a risk-creating condition, at least where, as here, the menace is one commonly encountered on land and not clearly linked to nautical adventure. . . . [A] cruise ship operator's liability hinges on whether it knew or should have known about the

8

dangerous condition." *Guevara*, 920 F.3d at 720 (emphasis added & cleaned up). Actual notice "exists when the defendant knows about the dangerous condition[.]" *Newbauer v. Carnival Corp.*, 26 F.4th 931, 935 (11th Cir. 2022). Constructive notice, on the other hand, can be shown in several ways. *First*, the plaintiff can demonstrate "that a 'defective condition existed for a sufficient period of time to invite corrective measures.'" *Ibid.* (quoting *Keefe*, 867 F.2d at 1322). *Second*, "a plaintiff can establish constructive notice with evidence of substantially similar incidents in which conditions substantially similar to the occurrence in question must have caused the prior accident." *Newbauer*, 26 F.4th at 935 (cleaned up). *Third*, a plaintiff may be able to establish constructive notice with evidence that a crewmember was in the "immediate vicinity" of the dangerous condition. *Aponte v. Royal Caribbean Cruise Lines Ltd.*, 739 F. App'x 531, 536 (11th Cir. 2018); *see also Williams v. Carnival Corp.*, 741 F. Supp. 3d 1261, 1268 (S.D. Fla. 2024) (Martinez, J.) ("A slip-and-fall plaintiff may also establish constructive notice . . . [with evidence that] the defendant's employees were in the vicinity of where the fall occurred, such that they should've known of the dangerous condition." (citations omitted)).

Branyon relies on *Aponte* for the proposition that Carnival's employees in the vicinity of the misplaced cable cover should have known that the cable cover created a dangerous condition. *See* Response at 5. In *Aponte*, the Eleventh Circuit found that evidence of a crewmember standing "in the immediate vicinity of a puddle of soap" could allow a reasonable factfinder to "conclude that the crewmember knew or should have known about the puddle of soap," which, the court held, was sufficient for the plaintiff to survive summary judgment on the constructive-notice claim. *Aponte*, 739 F. App'x at 536. And other judges in our District have found constructive notice on similar facts. *See, e.g.*, *Haiser v. MSC Cruises (USA) Inc.*, 2019 WL 4693200, at *5 (S.D. Fla. Aug. 9, 2019) (Smith, J.) ("A reasonable factfinder could conclude that crewmembers knew or should have known about the presence of water on floor since they were in [its] immediate vicinity[.]").

9

Reviewing the evidence in the light most favorable to the non-moving party, we find that Branyon has done *just* enough to survive summary judgment on her constructive-notice claim. Alan Lalhmangaihzual, the photographer's assistant, met Branyon in the Habana Lounge and led her to the atrium, passing immediately by or over the misplaced cable cover. *See* DSMF ¶ 4 ("Lalhmangaihzual was walking ahead of Branyon as they walked through the Habana Lounge."); *see also* DSMF Response ("Undisputed."). Carnival also told us in its interrogatory responses that the Habana Lounge bartender was in the vicinity of the cable cover and rendered assistance to Branyon immediately after her fall. *See* Defendant's Interrogatory Responses [ECF No. 55-2] at 5 ("Titing Wartini . . . [t]his crewmember was working as a bartender near the location of Plaintiff's alleged incident and may have provided Plaintiff assistance after the incident."). A reasonable factfinder *could* conclude that these two employees—both of whom regularly worked in or around the Habana Lounge—should have noticed that the cable cover was out of its normal position and that it thus posed a tripping hazard.

We therefore **DENY** the MSJ as to Branyon's constructive-notice claim. On the other hand, Branyon has produced *no* evidence *either* that Carnival had *actual* notice of the defect *or* that Carnival had constructive notice of the defect based on prior similar accidents. In fact, the evidence seems undisputed that no Carnival employee actually saw the cable cover's placement and that no similar accidents have ever been recorded. *See* Response at 6 ("None of these four crewmembers saw the misplaced cable hose protector yet it was far out of place at the time Ms. Branyon tripped and fell on it."); *see also* DSMF ¶ 23 ("There is no evidence that anyone else ever tripped on the cable cover before Branyon or complained that the cable cover posed a tripping hazard."); DSMF Response ¶ 23 ("Undisputed except that Defendant's Entertainment Technical Manager testified that the exposed end of a cable hose protector is a tripping hazard."). Since a party cannot survive summary judgment by adducing *no evidence* for its claim, *see Harrell v. City of Opa-Locka*, 2022 WL 898565, at *11 (S.D. Fla. Mar. 28, 2022) (Altman, J.) ("[I]f the nonmoving party has failed to make a sufficient showing on an

essential element of her case with respect to which she has the burden of proof, then the moving party is entitled to judgment as a matter of law." (citations omitted)), we **GRANT** Carnival's MSJ as to these two aspects of Counts I and II.

### III.   Vicarious Liability

Carnival next moves for summary judgment on Branyon's vicarious-liability claims (Counts III and IV) because "there is no evidence that any individual crew member breached a duty of care to Branyon[.]" MSJ at 9. Carnival claims that "there is no evidence of when and how the cable cover was moved out of place prior to Branyon's incident," and that there's no "evidence that either of the two [maintenance crewmembers who were assigned to the Habana Lounge] saw the cover in the incorrect position and failed to address it, or that it was out of place for so long that either of them could and should have seen it and corrected it or warned of it." *Id.* at 10. In Carnival's view, there's also no evidence that the photography assistant (whom Branyon was following when she tripped), "had a duty to maintain the area or breached such a duty, or that he breached a duty to warn." *Ibid.*

Branyon counters that "[i]t is reasonable to infer from the facts that Carnival's crew members created the hazardous condition, thus breaching their duty to Ms. Branyon." Response at 8. She argues that she "need not name a specific crewmember who created the condition when there are other means of identification, such as job duties." *Ibid.* (citing *Mathis v. Classica Cruise Operator Ltd. Inc.*, 2024 WL 1430508, at *4 (S.D. Fla. Apr. 1, 2024) (McCabe, Mag. J.), *report and recommendation adopted*, 2024 WL 3616006 (S.D. Fla. Aug. 1, 2024) (Cannon, J.)). Branyon also claims that "[a]t least one of the four crewmembers in the vicinity of the misplaced cable hose protector should have warned Ms. Branyon," and that "[t]he entertainment technical department crewmembers should have placed warning signs or cones" around the cable cover. Response at 8.

When an alleged maritime tortfeasor is an employee, "the principle of vicarious liability allows an otherwise non-faulty employer to be held liable for the negligent acts of that employee acting within

the scope of employment." *Holland v. Carnival Corp.*, 50 F.4th 1088, 1094 (11th Cir. 2022) (quotation marks omitted). A plaintiff asserting a vicarious-liability claim "need not establish that a shipowner had actual or constructive notice of a risk-creating condition to hold a shipowner liable for the negligent acts of its employees," *Yusko v. NCL (Bahamas), Ltd.*, 4 F.4th 1164, 1170 (11th Cir. 2021), but she must "identify [a] specific crewmember whose negligence cause[d] [her] injury" while that employee was acting within the scope of his employment, *Holland*, 50 F.4th at 1094. "A complaint in a vicarious liability case need not identify the negligent agent by name, so long as it identifies the agent by other means such as job duties or actions committed by the agent." *Mathis*, 2024 WL 1430508, at *4 (citing *Mclean v. Carnival Corp.*, 2023 WL 372061, at *1 (S.D. Fla. Jan. 24, 2023) (Scola, J.). After careful review, we find that Branyon hasn't introduced any evidence that a specific employee was negligent.

We allowed Branyon's Complaint to survive Carnival's Motion to Dismiss [ECF No. 10] because we found that, "[a]t this stage of the case, [ ] we see no reason to preclude the Plaintiff from proceeding with her theory that Carnival is vicariously liable for the negligent acts and omissions of an identified crewmember employee, a photographer's assistant whose negligence contributed to Ms. Branyon's trip and fall." *Branyon v. Carnival Corp.*, 2024 WL 3103313, at *5 (S.D. Fla. June 24, 2024) (Altman, J.). But now, Branyon concedes that "the only individual crewmember [she] believes did something wrong to cause her accident is 'whoever put the wire holder down[.]'" DSMF ¶ 15 (quoting Branyon Depo.); *see also* DSMF Response ¶ 15 ("Undisputed"). And the record evidence belies her theory that "whoever put the wire holder down" did so negligently. It's undisputed that a technician examined the cable cover the morning of Branyon's accident and found it to be positioned appropriately. *See* DSMF ¶ 19 ("The technician on duty on the day of Branyon's incident found the cables and cable cover in the appropriate place when they did their inspection that morning." (citation omitted)); *see also* DSMF Response ¶ 19 ("Undisputed."). The only reasonable assumption we can

draw, then, is that "whoever put the wire holder down" did so properly, and that it was only moved some time after the morning inspection. Branyon hasn't introduced any evidence of how or when the cable was moved—or any evidence that it was a Carnival employee who moved it.

Branyon also hasn't introduced any evidence (such as job descriptions, policies, testimony, etc.) that the employees she accuses of negligence (the photographer's assistant, the maintenance personnel, and the Habana Lounge bartender) were responsible for maintaining or monitoring electronic equipment like the cable cover. In fact, she tells us that "Carnival's Entertainment Technical crewmembers had sole responsibility for and control over the electrical equipment, including the cable hose protector[.]" Response at 3. Plus, Carnival's corporate representative testified that maintenance personnel are *not* responsible for maintaining electronic equipment. *See* Deposition of Suzanne Vazquez [ECF No. 55-4] at 95 ("[Maintenance personnel] would be assigned for housekeeping like spills, transfers of substances. They would not deal with, you know, exposed wires or technical equipment."). Despite the benefit of discovery, Branyon hasn't identified a specific employee who, despite a duty to maintain the cable cover or to warn Branyon about its presence, acted negligently. She also hasn't introduced evidence that any employees were required to "place[ ] warning signs or cones" around the cable cover and failed to do so. Response at 8.

Perhaps recognizing her lack of evidence, Branyon points to Carnival's "see something, say something" policy and argues that every crewmember near the cable cover had a duty to report it as misplaced. *See* Response at 4 ("Carnival had a policy that all crewmembers were responsible for ensuring that things, such as the cable hose protector, are not out of place. It has a 'see something, say something' policy."). But we don't think a "see something, say something" reporting policy confers an affirmative duty on all crewmembers to constantly inspect the ship for potential hazards. Instead, as the name implies, that policy requires crewmembers to report issues they have *actually seen*. And Branyon concedes that none of the employees she's identified in her Complaint (or Response) *actually*

saw the misplaced cable cover. *See* Response at 6 ("None of these four crewmembers saw the misplaced cable hose protector yet it was far out of place at the time Ms. Branyon tripped and fell on it.").

Branyon relies on *Mathis* for the proposition that she needn't *name* a specific, negligent employee (which is true), but *Mathis* still requires that she *identify* a specific, negligent employee by some *other* means. *See Mathis*, 2024 WL 1430508, at *4 (quote it). And, as we've discussed, she hasn't done that. In any event, *Mathis* is just different from our case. The plaintiff there slipped and fell when her shower failed to drain properly. *See Mathis*, 2024 WL 1430508 at *1. The *Mathis* Plaintiff's vicarious-liability claims survived a motion to dismiss because she alleged that, "prior to the cruise, an unknown crewmember was required to clean Plaintiff's cabin, which included running the water in the shower to clean the shower basin. The unknown crewmember would have known that the water was not draining properly, creating a hazard." *Id.* at *2 (citations omitted). As this summation makes plain, *Mathis* differs from our facts in *at least* four ways.

*First*, *Mathis* came to the court on a motion to dismiss—a stage of the case in which we assume the truth of the plaintiff's allegations and construe all reasonable inferences in her favor. *See Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) ("[T]he court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff."). To survive summary judgment, by contrast, Branyon must do more than merely allege that some employee was negligent. *See Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). To withstand summary judgment, the plaintiff must produce *evidence* to support each element of her claims. *See Holland*, 50 F.4th at 1094 (holding that, to survive summary judgment, a plaintiff asserting a vicarious-liability claim must identify a specific employee who acted negligently).

*Second*, in *Mathis*, Magistrate Judge McCabe described vicarious-liability claims as involving "an identifiable agent committ[ing] a tort through some affirmative act." *Mathis*, 2024 WL 1430508 at *4 (citing *Yusko*, 4 F.4th at 1164). But Branyon hasn't introduced *any* evidence of an affirmative, negligent act by any crewmember.

*Third*, *Mathis*'s facts were very different from ours. In *Mathis*, the plaintiff's complaint identified one *specific* employee who caused her injury—the crewmember responsible for cleaning her cabin. Branyon, in contrast, has blamed *several* crewmembers, including the entire department that had "control over the cable hose protectors" and "the four crewmembers in the vicinity of the misplaced cable hose protector[.]" Response at 8. Her argument that anybody with responsibility over the ship's entertainment equipment—or who might have walked near the cable cover—somehow breached a duty to her thus finds little support in *Mathis*.

*Fourth*, *Mathis* involved an allegation that the crewmember either "negligently failed to make certain that the shower was draining properly" or "negligently failed to warn the Plaintiff that the shower was not draining properly." *Mathis*, 2024 WL 1430508 at *4. Here, however, it's undisputed that an employee *did* examine the cable cover and found that it had been appropriately placed. *See* DSMF ¶ 19 ("The technician on duty on the day of Branyon's incident found the cables and cable cover in the appropriate place when they did their inspection that morning." (citation omitted)); *see also* DSMF Response ¶ 19 ("Undisputed."). Branyon's case would be analogous to *Mathis* if she could show that the on-duty technician *failed* to inspect the cable cover—or that, having noticed the cable cover's misplacement, he failed to fix it. But she has no evidence for either scenario.

Finally, it's telling that Branyon completely abandons her claims against any specific employee in her own Motion for Partial Summary Judgment—instead accusing Carnival's entire Entertainment Technical Department of negligence. *See* Plaintiff's MSJ at 9 ("Defendant's Entertainment Technical Department crew members had sole control of and responsibility for the maintenance of the subject

cable hose protecter. There is no genuine issue of material fact that Defendant's crew members breached this duty by failing to place the cable hose protector in its proper position."). Faced with an absence of evidence that any individual employee acted negligently, Branyon transforms her vicarious-liability claim into one against an entire department—something the Eleventh Circuit has found impermissible. *See Holland*, 50 F.4th at 1094 ("Holland did not identify any specific crewmember whose negligence caused Holland's injury, much less a specific crewmember whose negligence occurred while acting within the scope of his employment—essential parts of any claim seeking to impose vicarious liability on an employer for an employee's negligence."); *see also Yusko*, 4 F.4th at 1170 ("[C]ommon sense suggests that there will be just as many occasions where passengers are limited to a theory of direct liability. Sometimes, as in *Keefe*, a passenger will not be able to identify any specific employee whose negligence caused her injury." (citing *Keefe*, 867 F.2d)).

Because Branyon has no evidence that a *specific* employee negligently misplaced, moved, or failed to warn her about the cable cover, we **GRANT** Carnival's MSJ as to Counts III and IV.

**\* \* \***

Accordingly, we hereby **ORDER** and **ADJUDGE** as follows:

1. The Defendant's Motion for Summary Judgment [ECF No. 56] is **GRANTED in part** and **DENIED in part**.

   a. Summary judgment is **GRANTED** for Carnival on Counts III and IV of the Complaint [ECF No. 1].

   b. Summary Judgment is **GRANTED** for Carnival insofar as it argues that it didn't have *actual* notice of the misplaced cable cover *or* constructive notice through reports of similar prior accidents.

   c. All other portions of the MSJ are **DENIED**.

2.  The Plaintiff's Motion for Summary Judgment [ECF No. 59] is **DENIED as moot**. We've already found that Carnival is entitled to summary judgment on Counts III and IV, which are the only counts the Plaintiff discusses in her MSJ.

3.  The Clerk is directed to **REOPEN** this case and **LIFT** the stay.

4.  The parties shall file a new Joint Scheduling Report within **14 days** of this Order.

**DONE AND ORDERED** in the Southern District of Florida on November 11, 2025.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:      counsel of record